UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-134 (TSC) |
| v. : | |
| : | |
| STACEY STEPHENS : | |
| : | |
| **Defendant** : | |

### DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Stacey Stephens (hereinafter "Defendant" and/or "Stephens"), by and through Counsel, T. Brooke Howard II (hereinafter "Counsel"), respectfully submits this, **Defendant's Sentencing Memorandum** in connection with the above-captioned matter (hereinafter "Matter").

Defendant would respectfully request the Court follow the recommendation of Probation (Recommended Sentence) as set forth in its **9/22/23 Sentencing Recommendation, attached hereto and incorporated by reference as if fully set forth herein as Exhibit A.**

That said, in the alternative, in the event the Court were to depart from the Recommended Sentence in favor of the Government's recommendation, as set forth in its sentencing memorandum, Defendant would submit that she respects all but one provision of the Government's sentencing request, namely, the specific provision recommending "…14 days' intermittent confinement…" In lieu of the same, if the Court were to adopt the Government's recommendation, the Defendant would respectfully request *14 days' in-home incarceration*, along a 36-month term of probation, along with 60 hours of community service, and $500 restitution is appropriate if otherwise deemed so by the Court.

Defendant respectfully submits the following by way of support of her position.

I. **Introduction and Factual/Procedural Background**

By way of Introduction and Factual/Procedural Background, Defendant would cite and adopt collectively the **3/24/23 Criminal Complaint and 6/26/23 Plea Agreement and Statement of Offense, collectively attached hereto and incorporated by reference as if fully set forth herein as Exhibit B.**

A. **Particular Facts Materially Relevant and in Support of Following the Recommended Sentence of Probation, or in the alternative, in-home incarceration as opposed to the Government's recommendation.**

i. **Defendant's Full and Complete Cooperation**

At all times relevant to this Matter, Defendant has been fully cooperative with the Government's investigation, and accepted full responsibility for her actions from the begginging. As cited in the Government's Sentencing Memorandum, "…on August 10, 2022, Stephens gave a pre-arrest interview to the FBI. During the interview, she admitted traveling to Washington, D.C. with her mother to see the former President speak on the National Mall on January 6, 2021.

Stephens stated that she and her mother traveled to Washington, D.C., via the metro. She stated that she was dressed in red, white, and blue, wearing a wool Trump hat and a red "Trump 2020" scarf. Stephens identified herself in a photograph presented by the agents, depicting her on or near the Capitol grounds and inside the U.S. Capitol on January 6, 2023…"

Significantly, Defendant emphasized that she was left with little choice but to accompany her Mother (again, now deceased from cancer) as she entered the U.S. Capitol, so as protect her and make sure she would remain safe among the crowd. In fact, it was at Defendant's behest that

2

she was able to convince her Mother to leave the U.S. Capitol, and as such, Defendant remained inside the U.S. Capitol for approximately five minutes.

    ii.    **Defendant's Description and Reason for Presence In the U.S. Capitol on January 6th (Following Her Now Deceased Mother Out of Concern for her Saftey)**

Defendant's written description of her actions, and reasons for the same, follows:

*January 6, 2021*
*Stacey Lynn Stephens*

*This is my attempt to document, to the best of my knowledge, the course of events for the day of January 6, 2021. Being that this event occurred more than 2 years ago, my memories of the day are not 100% clear.*

*The day started with a metro ride with my mom, Linda Carpenter, into DC. I'm not sure of our arrival station. I rarely go into DC, so navigation is a bit challenging. We wondered around a bit and finally found the location for President Trump's speech. There were thousands of people there, probably hundreds of thousands. My mom and I were on the outskirts of the crowd. We could see the President's arrival. If he was facing forward to the audience, we were on his left.*
*While standing in the crowd, trying to hear the speech, we met two ladies that we befriended. We got into a conversation. The lady with the hat was a hairdresser from Indiana, "Dona". The other lady I knew as "Anna". I believe there were others in their group, but these were the two ladies with whom my mom and I conversed. We continued to try to listen to the President's speech, but it was hard to hear.*

*People around us were beginning to suggest heading to the capitol. We were all heading there peacefully. We left before President was finished speaking because we really couldn't hear him anyway. Dona, Anna my mom and I decided we would walk together. I think it was after 1 PM, but I cannot be sure of time. I wasn't watching the clock at all. I'm estimating that it took around 45 minutes to walk to the Capitol.*

*When we arrived at the Capitol, there were already thousands or hundreds of thousands of people there. We saw people standing on the scaffolding, and there were guys with bull horns dressed in tan (don't recall if it was military color) but they were urging people forward toward the building. At this point we were hanging back. My mom, who was aged 74 at the time, was super pumped up and motivated to get close to the building. I was hesitant, but when she gets something in her head, there is no changing her mind. I was not going to let her go alone. Dona and Anna joined. They were also concerned for her welfare, so together we moved forward. There were no real impediments and we moved with the crowd.*

*The crowd was generally peaceful although there were some angry looking young men dressed in black that seemed more aggressive. Crowding became more dense and pushy as we got closer to the building. There was smoke around us. Someone said tear gas, but no one seemed to be reacting as if it were tear gas, and we didn't know where it was coming from. I don't recall seeing police officers while going toward the building. I did see some type of scuffle to my left at a doorway with steps and a railing.*

*We were very close, and suddenly a door opened, and the crowd pushed through. We were amongst that group. I don't think there was any turning back at that point for fear of getting run over. My mom was the first of our group to cross the threshold, and she disappeared into the crowd. I panicked. I couldn't see her. Dona and Anna were right by me. We were all frantically looking for her as people milled around us. We finally located her and got her with us. We stepped back by a wall not entirely sure where we were other than inside the building. A young man came by us heading to our right. He said to us, you ladies should leave, and pointed us back to the door. In the meantime, Dona said to him, will you take a picture with us? He appeared to us to be some form of military and was very kind. My mom took the picture, but I'm not sure who's phone she used. Then we immediately left the building through the same door through which we entered. I believe the time from when we crossed the threshold into the building until we left was about 5 minutes. When we came out of the building, there was a TV cameraman amongst the crowd which for some reason startled me. It seems to me we passed by a group of police officers standing in a line, but that memory is not at all clear.*

*We started to walk down stairs and to the right making our way back towards the metro as we wanted to be out of DC and preferably home before it got dark. We came upon someone getting beat up. I don't know where we were at this point, but this made us even more nervous, of course so we (my mom and I) hurried to find a metro station.*
*I don't recall where we said good byes to Dona and Anna, but they were staying somewhere in DC. They had travelled to DC from Indiana.*

### iii. Defendant's Recent Loss of Her Husband

Defendant would cite and adopt her **10/4/23 Motion to Amend Bond attached hereto and incorporated by reference as if fully set forth herein as Exhibit C.**

### iv. Defendant's Background, Employment and Current Living Arrangements

Defendant would cite and adopt her **9/22/23 Pre-Sentence Investigation Report, attached hereto and incorporated by reference as if fully set forth herein as Exhibit D.**

4

**II.     Statutory Penalties Sentencing Factors Under 18 U.S.C. § 3553(a)**

Stephens now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Stephens faces up to six months of imprisonment and a fine of up to $5,000. Stephens must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.

**III.    Conclusion**

Defendant would respectfully request the Court follow the recommendation of Probation (Recommended Sentence) as set forth in its 9/22/23 Sentencing Recommendation, as set forth in Exhibit A.

That said, in the alternative, in the event the Court were to depart from the Recommended Sentence in favor of the Government's recommendation, as set forth in its sentencing memorandum, Defendant would submit that she respects all but one provision of the Government's sentencing request, namely, the specific provision recommending "…14 days' intermittent confinement…" In lieu of the same, if the Court were to adopt the Government's recommendation, the Defendant would respectfully request ***14 days' in-home incarceration***, along a 36-month term of probation, along with 60 hours of community service, and $500 restitution is appropriate if otherwise deemed so by the Court.

        **Respectfully submitted,**

        **STACEY STEPHENS**
        **By Counsel**

**By:   /S/ T. Brooke Howard II**
**T. Brooke Howard II, Esq. (VSB#84910)(U.S. District Ct., D.C.#VA169)**
**Law Offices of Howard & Howard, PLC**
**7 Hotel Street**
**The California Building**
**Warrenton, Virginia 20186**
**Telephone: (540) 422-0100**
**Facsimile: (540) 422-0099**
**Email: TBH@hhlawva.com**
**Counsel for Defendant**