

**SENTENCING RECOMMENDATION**
**UNITED STATES V. STACEY STEPHENS**
**DOCKET NO.: 0090 1:23CR00134-001**

|  | **Statutory Provisions** | **Recommended Sentence** |
|---|---|---|
| **CUSTODY:** | Up to 6 months | Not Recommended |
| **SUPERVISED RELEASE:** | Not Applicable | Not Applicable |
| **PROBATION:** | Up to 5 years | 12 months (1 year) |
| **FINE:** | $5,000 | Not Recommended |
| **RESTITUTION:** | $500 | $500 |
| **SPECIAL ASSESSMENT:** | $10 | Ct. 4: $10 |

## Justification:

Stacey Stephens stands before the Court for sentencing after having pled guilty to Parading, Demonstrating, or Picketing in a Capitol Building. Stephens was present during the January 6, 2021, riot and ultimately entered and remained in the Capitol Building for approximately 15 minutes. When interviewed by law enforcement, Stephens admitted she was in Washington, DC, with her mother to see President Trump speak. Stephens, a 57-year-old woman, has lived an otherwise law abiding, fruitful life. Her husband just recently passed away after battling cancer. She shares close relationships with both of her children: an 18-year-old foster daughter she and her late husband took into their home in 2022 as well as a 25-year-old stepdaughter. Stephens is overall physically and mentally healthy, though she has experienced a great deal of loss within a short time contributing to high levels of stress. She is college educated with a history of gainful employment in software security. She also runs an equestrian business at her home which she is quite passionate about. While on pretrial release, Stephens has been compliant with no issues to note. It does not appear that a custodial sentence would be appropriate for Ms. Stephens based upon her otherwise law-abiding life and her involvement in the offense being limited to being present in the Capitol when she should not have been.

The Probation Office's recommendation considers the sentencing factors set forth in 18 USC § 3553(a). The recommended special conditions are supported by defendant's personal history and characteristics, referenced withing the presentence report, and the need for community-based rehabilitation. Payment of restitution is required pursuant to the plea agreement. Additionally, community service may be imposed in lieu of the imposition of a fine.

**<u>Voluntary Surrender:</u>**

The defendant is a good candidate for voluntary surrender as she is compliant with the conditions of her release, has appeared for all scheduled Court appearances, and is not an apparent flight risk or a danger to the community. 18 USC § 3143(a)(2).

Respectfully Submitted,

**BRIAN D. SHAFFER**
**CHIEF UNITED STATES PROBATION OFFICER**

By:    s/Macy Mullins

Macy Mullins
United States Probation Officer
219-852-3642

Approved:

s/Jaime A. Klopfenstein    Date: 09/22/2023

Jaime A. Klopfenstein
US Probation Officer
219-852-3663

# SENTENCING FORMAT

Should the court concur with our recommendation, the probation office suggests the following language be used for imposition of sentence.

---

Pursuant to the Sentencing Reform Act of 1984, and in consideration of the provisions of 18 USC § 3553, as well as the advisory sentencing guidelines, it is the judgment of the Court that you, Stacey Stephens, are hereby sentenced to a term of 12 months of probation on Count 4 . In addition, you are ordered to pay a special assessment of $10 in accordance with 18 USC § 3013.

While on supervision, you shall abide by the following mandatory conditions, as well as all discretionary conditions recommended by the probation office in Part D. Sentencing Options of the presentence report, which are imposed to establish the basic expectations for your conduct while on supervision. The mandatory conditions include:

1. You must not commit another federal, state, or local crime.
2. You must not unlawfully possess a controlled substance.
3. The mandatory drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.
4. You must make restitution in accordance with 18 USC §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.

The Court authorizes supervision and jurisdiction of this case to be transferred to the United States District Court for the Eastern District of Virginia.

You are ordered to make restitution to in the amount of $500 to the Architect of the Capitol. The Court determined you do not have the ability to pay interest and therefore waives any interest or penalties that may accrue on the balance.

Restitution payments shall be made to the Clerk of the Court for the United States District Court, District of Columbia, for disbursement to the following victim:

| Victim Name | Amount of Loss |
|---|---|
| Architect of the Capitol | $500.00 |
| Office of the Chief Financial Officer | |
| Ford House Office Building, Room H2-205B | |
| Washington, DC 20515 | |

Restitution Obligation – You must pay the balance of any restitution within 30 days of this judgment OR at a rate of no less than $250 per month.

Community Service - You must complete 50 hours of community service within ten months. The probation officer will approve the community service program. You must provide written verification of completed hours to the probation officer.

<u>Firearm Restriction</u> - You shall remove firearms, destructive devices, or other dangerous weapons from areas over which you have access or control until the term of supervision expires.

The Probation Office shall release the presentence investigation report to all appropriate agencies, which includes the United States Probation Office in the approved district of residence, in order to execute the sentence of the Court. Treatment agencies shall return the presentence report to the Probation Office upon the defendant's completion or termination from treatment.

**NOTICE OF APPEAL**

You have the right to appeal your conviction(s) of guilt.

Pursuant to 18 U.S.C. § 3742(a)(4), you also have a statutory right to appeal your sentence imposed on the Class B/C Misdemeanor under certain circumstances, including if you think the sentence was imposed in violation of law or "is plainly unreasonable." You may also appeal your sentence if you believe you received ineffective assistance of counsel at sentencing.

Pursuant to 28 U.S.C. § 2255, you also have the right to challenge the conviction entered or sentence imposed, to the extent permitted by that statute [and your plea agreement].

Any notice of appeal must be filed within fourteen days of the entry of judgment or within fourteen days of the filing of a notice of appeal by the government. If you are unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you. On appeal, you may also apply for court-appointed counsel.

**FINAL NOTICE TO PARTIES** – Pursuant to D.C. Circuit opinion in United States v. Hunter, 809 F.3d 677, decided on January 12, 2016 - Are there any objections to the sentence imposed that are not already noted on the record?

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| United States of America<br>v.<br><br>Stacey Lynn Stephens<br>DOB: XXXXXX<br><br>———————————————<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:23-mj-64<br>Assign to: Magistrate Judge Zia M. Faruqui<br>Date: 03/24/2023<br>Description: COMPLAINT WITH ARREST WARRANT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 6, 2021_____ in the county of _____ in the

_____ in the District of ___Columbia___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1752(a)(1) - Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority,<br>18 U.S.C. § 1752(a)(2) - Disorderly and Disruptive Conduct in a Restricted Building or Grounds,<br>40 U.S.C. § 5104(e)(2)(D) - Disorderly Conduct on Capitol Grounds,<br>40 U.S.C. § 5104(e)(2)(G) - Parading, Demonstrating, or Picketing in any of the Capitol Buildings. | |

This criminal complaint is based on these facts:

See attached statement of facts.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Bela Schuler, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone.

Date: _____03/24/2023_____

Zia M. Faruqui
Digitally signed by
Zia M. Faruqui
Date: 2023.03.24
13:18:28 -04'00'

_____
*Judge's signature*

City and state: _____Washington, D.C._____

Zia M. Faruqui, U.S. Magistrate Judge
*Printed name and title*

## STATEMENT OF FACTS

Your affiant, Bela Schuler, is a Special Agent assigned to the Federal Bureau of Investigation. In my duties as a special agent, I am assigned to a Counterterrorism squad, focused on investigating criminal activities associated with Homegrown Violent Extremists. I have completed training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the January 6, 2021 events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On or about May 25, 2022, an FBI CHS who has been deemed credible and reliable through previous reporting provided open source media images of Stacey Lynn Stephens along with videos, wherein Stephens is observed inside of the U.S. Capitol building on January 6, 2021. The CHS also provided photographs of still shots where Stephens is seen in the videos inside the Capitol. The CHS included identification of possible physical attributes that align between the open source images (Images 1-4 below) and the images from the U.S. Capitol on January 6, 2021.



*Image 1*


*Image 2 (Stephens indicated with the yellow box)*


*Image 3 (close-up of Stephens from Image 2)*
*Image 4 (Stephens depicted on the left on January 6, 2021)*


*Image 4 (Stephens indicated in the yellow circle)*

FBI WFO reviewed CCTV footage of the U.S. Capitol on January 6, 2021. United States Capitol Police ("USCP") images and surveillance footage of subject believed to be Stephens outside the U.S. Capitol prior to entry, entry into the Capitol, and exit from the Capitol. Below are images taken from the aforementioned video footage; Stephens is identified in the majority of the photos with a yellow circle. Stephens is observed outside the Senate Wing Door at approximately 2:50 p.m., as shown in Images 5 and 6 below.

 

*Image 5 and 6 (Open source footage from January 6, 2021)*

Stephens enters the Senate Wing Door at approximately 2:50 pm as shown in Images 7-9 below.



*Image 7 (USCP CCTV, Senate Wing Doors, at appx. 2:50 pm)*



*Image 8* (USCP CCTV, Senate Wing Doors, at appx. 2:50pm)



*Image 9* (USCP CCTV, Senate Wing Doors, at appx. 2:52pm)

After entering via the Senate Wing Doors, Stephens followed fellow rioters south toward the Crypt, returning and exiting via the Senate Wing Doors approximately fifteen minutes later, at 3:05 pm, and as depicted in Images 10-12 below.



***Image 10*** *(USCP CCTV, Senate Wing Doors, at appx 3:05pm)*



***Image 11*** *(USCP CCTV, Senate Wing Doors, at appx 3:05pm)*



*Image 12* (USCP CCTV, Senate Wing Doors, at appx 3:05pm)

Pursuant to legal process, agents reviewed Facebook records for account with a display name of Stacey Lynn. The Facebook account also listed Stephens' phone number; XXX-XXX-2428. Pursuant to legal process, agents also reviewed Verizon records and confirmed Stephen's phone number and physical address; XXXX Fairview Ln., Broad Run, VA, and the phone number listed on Stephen's Facebook account matches the phone number Stephens has with Verizon.

Pursuant to legal process, agents also reviewed Stephens' bank records which indicated that Stacey L. Stephens had a JP Morgan Chase account ending in 7174 that had two $10 transactions on January 6, 2021 titled "Metro 103-Vienna Fairfax VA".

On August 10, 2022, FBI Special Agents interviewed Stacey Stephens at her residence. Stephens stated that she and her mother, Linda Carpenter, went to see President Trump speak on the National Mall on January 6, 2021. Stephens and Carpenter traveled to Washington, D.C. via the metro. Stephens was dressed in red, white, and blue and wore a Trump hat and a red 2020 Trump scarf. During the interview, Stephens confirmed what she was wearing by viewing a photo shown to her by the Agents.



***Image 13*** *(Photo shown to Stephens during interview)*

Stephens stated that she entered the U.S. Capitol to protect her elderly mother, to make sure she would remain safe among the crowd. Stephens and Carpenter were inside the U.S. Capitol for approximately five minutes.

Based on the foregoing, your affiant submits that there is probable cause to believe Stacey Stephens violated 18 U.S.C. § 1752(a)(1) and (2) which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that Stacey Stephens violated 40 U.S.C. § 5104(e)(2)(D) which makes it a crime to engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress and (G) to willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings.

_____
Special Agent Bela Schuler
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 24th day of March 2023.

Zia M.
Faruqui

Digitally signed by Zia M. Faruqui
Date: 2023.03.24 12:40:40 -04'00'

_____
HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

Law Offices of

# HOWARD & HOWARD

---

**BLAIR D. HOWARD, Esq.\*^**
**T. BROOKE HOWARD II, Esq. \***

---

**ADMITTED:**

  **\* VIRGINIA.**
**^4th CIRCUIT**
**EASTERN DISTRICT OF**
**VIRGINIA**



**THE CALIFORNIA BLDG.**
**c.1850**
**7 Hotel  Street**

**Tel. (540) 422-0100**
**Fax  (540) 422-0099**

INFO@HHLawVa.com

www.HHLawVa.com

*CELEBRATING 100 YEARS OF LEGAL SERVICES, FROM OUR FAMILY, TO YOURS*



U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

---

*Patrick Henry Building*
*601 D St., N.W.*
*Washington, D.C. 20530*

April 26, 2023

*Via E-mail*
T. Brooke Howard
Counsel for the Defendant
tbh@hhlawva.com

      Re:    United States v. Stacey Stephens
             Criminal Case No. 23-CR-134 (TSC)

Dear Mr. Howard:

This letter sets forth the full and complete plea offer to your client, **Stacey Stephens** (hereinafter referred to as "your client" or "defendant"), from the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office"). This plea offer expires on **June 26, 2023**. If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement (hereinafter referred to as "this Agreement"). The terms of the offer are as follows:

### 1.    **Charges and Statutory Penalties**

Your client agrees to plead guilty to Count Four of the Information, charging your client with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

Your client understands that a violation of Title 40, United States Code, Section 5104(e)(2)(G) carries a maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a term of probation of not more than five (5) years, pursuant to 18. U.S.C. § 3561(c), a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

In addition, pursuant to 18 U.S.C. § 3013(a)(1)(A)(ii), your client agrees to pay a special assessment of $10 to the Clerk of the United States District Court for the District of Columbia.

## 2. **Factual Stipulations**

Your client agrees that the attached "Statement of Offense" fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty. Please have your client sign and return the Statement of Offense as a written proffer of evidence, along with this Agreement.

## 3. **Cooperation with Additional Investigation**

Your client agrees to allow law enforcement agents to conduct an interview of your client regarding the events in and around January 6, 2021 prior to sentencing.

## 4. **Additional Charges**

In consideration of your client's guilty plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense. The Government will request that the Court dismiss the remaining counts of the Information in this case at the time of sentencing. Your client agrees and acknowledges that the charges to be dismissed at the time of sentencing were based in fact.

After the entry of your client's plea of guilty to the offense identified in paragraph 1 above, your client will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia by your client prior to the execution of this Agreement and about which this Office was made aware by your client prior to the execution of this Agreement. However, the United States expressly reserves its right to prosecute your client for any crime of violence, as defined in 18 U.S.C. § 16 and/or 22 D.C. Code § 4501, if in fact your client committed or commits such a crime of violence prior to or after the execution of this Agreement.

## 5. **Sentencing Guidelines Do Not Apply**

Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a). Your client further understands that 40 U.S.C. § 5104(e)(2)(G) is a class B misdemeanor, as defined by 18 U.S.C. § 3559(a)(7). Accordingly, pursuant to § 1B1.9 of the United States Sentencing Commission, *Guidelines Manual* (2018), the sentencing guidelines do not apply to your client's sentencing.

## 6. **Reservation of Allocution**

The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement.

In addition, if in this Agreement the parties have agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the parties reserve the right to full allocution in any post-sentence litigation. The parties retain the full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

### 7.   Court Not Bound by this Agreement

Your client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. § 3553(a). Your client further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Your client acknowledges that the Court is not obligated to follow any recommendation of the Government at the time of sentencing. Your client understands that the Government's recommendation is not binding on the Court.

Your client acknowledges that your client's entry of a guilty plea to the charged offense authorizes the Court to impose any sentence, up to and including the statutory maximum sentence. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence that does not follow the Government's sentencing recommendation. The Government and your client will be bound by this Agreement, regardless of the sentence imposed by the Court. Any effort by your client to withdraw the guilty plea because of the length of the sentence shall constitute a breach of this Agreement.

### 8.   Conditions of Release

Your client acknowledges that, although the Government will not seek a change in your client's release conditions pending sentencing, the final decision regarding your client's bond status or detention will be made by the Court at the time of your client's plea of guilty. The Government may move to change your client's conditions of release, including requesting that your client be detained pending sentencing, if your client engages in further criminal conduct prior to sentencing or if the Government obtains information that it did not possess at the time of your client's plea of guilty and that is relevant to whether your client is likely to flee or pose a danger to any person or the community. Your client also agrees that any violation of your client's release conditions or any misconduct by your client may result in the Government filing an ex parte motion with the Court requesting that a bench warrant be issued for your client's arrest and that your client be detained without bond while pending sentencing in your client's case.

### 9.   Waivers

### A.   Venue

Your client waives any challenge to venue in the District of Columbia.

**B.     Statute of Limitations**

Your client agrees that, should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, any prosecution, based on the conduct set forth in the attached Statement of Offense, that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution of conduct set forth in the attached Statement of Offense that is not time-barred on the date that this Agreement is signed.

**C.     Trial Rights**

Your client understands that by pleading guilty in this case your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule. Your client agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of your client's guilty plea. Your client also agrees to waive, among other rights, the right to plead not guilty, and the right to a trial. If there were a trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to challenge the admissibility of evidence offered against your client, to compel witnesses to appear for the purpose of testifying and presenting other evidence on your client's behalf, and to choose whether to testify. If there were a trial and your client chose not to testify at that trial, your client's failure to testify could not be held against your client. Your client would be presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt. If your client were found guilty after a trial, your client would have the right to appeal your client's conviction. Your client understands that the Fifth Amendment to the Constitution of the United States protects your client from the use of self-incriminating statements in a criminal prosecution. By entering a plea of guilty, your client knowingly and voluntarily waives or gives up your client's right against self-incrimination.

Your client acknowledges discussing with you Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights that arise under these rules in the event your client withdraws your client's guilty plea or withdraws from this Agreement after signing it.

Your client also agrees to waive all constitutional and statutory rights to a speedy sentence and agrees that the plea of guilty pursuant to this Agreement will be entered at a time decided upon by the parties with the concurrence of the Court. Your client understands that the date for sentencing will be set by the Court.

### D.    Appeal Rights

Your client agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s). Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client also agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum determined by the Court. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, your client retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

### E.    Collateral Attack

Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel.

### F.    Hearings by Video Teleconference and/or Teleconference

Your client consents, under the CARES Act, Section 15002(b)(4), Federal Rule of Criminal Procedure 43(b)(2), and otherwise, to hold any proceedings in this matter – specifically including but not limited to presentment, initial appearance, plea hearing, and sentencing – by video teleconference and/or by teleconference and to waive any rights to demand an in-person/in-Court hearing. Your client further agrees to not challenge or contest any findings by the Court that it may properly proceed by video teleconferencing and/or telephone conferencing in this case because, due to the COVID-19 pandemic, an in-person/in-Court hearing cannot be conducted in person without seriously jeopardizing public health and safety and that further there are specific reasons in this case that any such hearing, including a plea or sentencing hearing, cannot be further delayed without serious harm to the interests of justice.

### 10.    Use of Self-Incriminating Information

The Government and your client agree, that the Government will be free to use against your client for any purpose at the sentencing in this case or in any related criminal or civil proceedings, any self-incriminating information provided by your client pursuant to this

Agreement or during the course of debriefings conducted in anticipation of this Agreement, regardless of whether those debriefings were previously covered by an "off the record" agreement by the parties.

## 11. **Restitution**

Your client acknowledges that the riot that occurred on January 6, 2021, caused, as of October 14, 2022, approximately $2,881,360.20 damage to the United States Capitol. Your client agrees as part of the plea in this matter to pay restitution to the Architect of the Capitol in the amount of $500.

Payments of restitution shall be made to the Clerk of the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, your client agrees to disclose fully all assets in which your client has any interest or over which your client exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Your client agrees to submit a completed financial statement on a standard financial disclosure form which has been provided to you with this Agreement to the Financial Litigation Unit of the United States Attorney's Office, as it directs. If you do not receive the disclosure form, your client agrees to request one from usadc.ecfflu@usa.doj.gov. Your client will complete and electronically provide the standard financial disclosure form to usadc.ecfflu@usa.doj.gov 30 days prior to your client's sentencing. Your client agrees to be contacted by the Financial Litigation Unit of the United States Attorney's Office, through defense counsel, to complete a financial statement. Upon review, if there are any follow-up questions, your client agrees to cooperate with the Financial Litigation Unit. Your client promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement could be prosecuted as a separate crime punishable under 18 U.S.C. § 1001, which carries an additional five years' incarceration and a fine.

Your client expressly authorizes the United States Attorney's Office to obtain a credit report on your client in order to evaluate your client's ability to satisfy any financial obligations imposed by the Court or agreed to herein.

Your client understands and agrees that the restitution or fines imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, your client understands that the schedule of payments is merely a minimum schedule of payments and will not be the only method, nor a limitation on the methods, available to the United States to enforce the criminal judgment, including without limitation by administrative offset. If your client is sentenced to a term of imprisonment by the Court, your client agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically imposes a schedule of payments.

Your client certifies that your client has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this Agreement and/or that may be imposed by the Court. In addition, your client promises to make no such transfers in the future until your client has fulfilled the financial obligations under this Agreement.

12. **Breach of Agreement**

Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Agreement. In the event of such a breach: (a) the Government will be free from its obligations under this Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of, this Agreement, whether or not the debriefings were previously characterized as "off-the-record" debriefings, and including your client's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Your client understands and agrees that the Government shall be required to prove a breach of this Agreement only by a preponderance of the evidence, except where such breach is based on a violation of federal, state, or local criminal law, which the Government need prove only by probable cause in order to establish a breach of this Agreement.

Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. In the event of such a breach, your client will not be allowed to withdraw your client's guilty plea.

13. **Complete Agreement**

No agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against your client.

If the foregoing terms and conditions are satisfactory, your client may so indicate by signing this Agreement and the Statement of Offense, and returning both to me no later than **June 26, 2023.**

Sincerely yours,

Matthew M. Graves
United States Attorney

By: 

Douglas Meisel
Trial Attorney, detailee

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorney, T. Brooke Howard, Esq. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date 23 Jun 2023

**Stacey Stephens**
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, **Stacey Stephens**, and fully discussed the provisions of this Agreement with my client. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 6/23/23

T. Brooke Howard, Esq.
Attorney for Defendant

Law Offices of

# HOWARD & HOWARD

---

**BLAIR D. HOWARD, Esq.\*^**
**T. BROOKE HOWARD II, Esq. \***

---

**ADMITTED:**

 **\* VIRGINIA.**
**^4th CIRCUIT**
**EASTERN DISTRICT OF**
**VIRGINIA**



**THE CALIFORNIA BLDG.**
**c.1850**
**7 Hotel  Street**

**Tel. (540) 422-0100**
**Fax   (540) 422-0099**

INFO@HHLawVa.com

www.HHLawVa.com

*CELEBRATING 100 YEARS OF LEGAL SERVICES, FROM OUR FAMILY, TO YOURS*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-CR-134 (TSC)** |
| | : | |
| **v.** | : | **40 U.S.C. § 5104(e)(2)(G)** |
| | : | |
| **STACEY STEPHENS,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Stacey Stephens, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020

Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *STEPHENS's Participation in the January 6, 2021, Capitol Riot*

8.     On January 6, 2021, at approximately 2:50 p.m., Stephens was part of a mob that had gathered on the Upper West Terrace of the U.S. Capitol, outside the Senate Wing doors.

9.     At that time, several Capitol police officers stood inside the Senate Wing door entrance, verbally confronted by rioters. Stephens was present as members of the mob ignored the line of officers and pressed forward inside the U.S. Capitol.

10.     Once inside the Capitol, Stephens proceeded south toward the Crypt. She spent approximately 15 minutes inside the Capitol, exiting via the Senate Wing doors at 3:05 pm.

11.     On August 10, 2022, Stephens was interviewed by Special Agents assigned to the FBI Washington Field Office and admitted that she and her mother, Linda Carpenter, went to see President Trump speak on the National Mall on January 6, 2021. Stephens, a white female with light-colored hair, stated that she wore red, white, and blue and wore a wool Trump hat and a red

"Trump 2020" scarf. During the interview, Stephens confirmed what she was wearing by viewing a photo shown to her by the Agents.

### *Elements of the Offense*

12.     Stacey Stephens knowingly and voluntarily admits to all the elements of 40 U.S.C. § 5104(e)(2)(G) which makes it a crime to willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings. Specifically, Stephens admits that she willfully and knowingly entered the U.S. Capitol Building knowing that that she did not have permission to do so. Stephens further admits that while inside the Capitol, she willfully and knowingly paraded, demonstrated, or picketed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Douglas Meisel*
Douglas S. Meisel
Trial Attorney, detailee
N.Y. Bar No. 4581393

## DEFENDANT'S ACKNOWLEDGMENT

I, Stacey Stephens, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 23 Jun 2023

Stacey Stephens
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/23/23

T. Brooke Howard, Esq.
Attorney for Defendant

Page 5 of 5





## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       :

:

v.                             :

:

                               : Docket No.: 0090 1:23CR00134-001

:

STACEY STEPHENS,               :

:

Defendant.                     :

## MOTION AND AFFIDAVIT TO AMEND RELEASE/BOND CONDITION

CAME THIS DAY the Defendant, STACEY STEPHENS, by and through Counsel, and without objection from the Government, and moves this Honorable Court, pursuant to 18 USCS § 3143, and 18 USCS § 3142(b)(c), to amend certain release/bond conditions as set forth in the Court's initial 3/30/2023 Order Setting Conditions of Release and Appearance Bond Orders (hereinafter collectively "Bond Order"), and in support thereof does state the following:

1) In the Bond Order, specifically provision 7.d. and 7.e., Ms. Stephens was ordered to "surrender any passport to: Pretrial Services-Washington, D.C"….and to…"not obtain a passport or other international travel documents." **SEE Bond Order, attached hereto and incorporated by reference as if fully set forth herein as Exhibit A.**

2) Ms. Stephens forfeited her Passport as instructed, and has neither held, nor attempted to acquire another, issued from the United States or otherwise, since surrender.

3) That said, on or about Tuesday, 9/5/23, Ms. Stephens' Husband, Mr. Stephen Larry Stephens, passed away on, succumbing to a long and hard-fought battle with cancer. In accordance with his final wishes, Ms. Stephens has planned his funeral arrangements and family gathering at his favorite place, Hotel Los Pescadores, located in Los Barriles, Baja Del Sur, Mexico.
She shipped his remains there for funeral preparations on 9-25-23. The funeral arrangements are scheduled for the week of October 15th – 21st, 2023. Ms. Stephens.

4) In light of these circumstances, Ms. Stephens is requesting that the specific provisions of her Bond Order as set forth above and herein be AMENDED, to:

   a. Permit her to travel outside of the United States to Hotel Los Pescadores, located in Los Barriles, Baja Del Sur, Mexico, between submission of this Motion and her Sentencing Event (which is being continued from 10/2/23 to one of three of the following dates – 10/30/23, 10/31/23, or 11/3/23);

   b. In order for her to travel as set forth above and herein, order that her Passport be returned to her by Pre-Trial Services, Washington, D.C., immediately upon entry of an order amending said Bond Conditions.

5) Ms. Stephens respectfully submits that, based upon her: i) compliance and behavior while on pre-trial services; ii) and all of the background facts and circumstances relevant to the Court's Bond analysis and determination, as set forth more particularly in her 9/22/23 Final Pre-Sentence Investigation Report, that the Court as can be reasonably assured of her appearance at her sentencing event, and that she is neither a danger to herself, nor the safety of any other person or the community. **SEE Bond Order, attached hereto and incorporated by reference as if fully set forth herein as Exhibit B.**

6) Finally, upon Defense Counsel's coordination with the Government's Counsel in this matter, the Government does not oppose the aforementioned requests.

**WHEREFORE,** based on the facts and circumstances set forth above and herein, and pursuant to 18 USCS § 3143, and 18 USCS § 3142(b)(c), your Defendant, STACEY STEPHENS, respectfully requests the Court to amend certain release/bond conditions as set forth in the Court's initial 3/30/2023 Order Setting Conditions of Release and Appearance Bond Orders, and more particularly, that: 1) The Court permit her to travel outside of the United States to Hotel Los Pescadores, located in Los Barriles, Baja Del Sur, Mexico, between submission of this Motion and her Sentencing Event (which is being continued from 10/2/23 to one of three of the following dates – 10/30/23, 10/31/23, or 11/3/23); 2) In order for her to travel as set forth above and herein, the Court order that her Passport be returned to her by Pre-Trial Services, Washington, D.C., immediately upon entry of an order amending said Bond Conditions; and 3) order whatever further relief to the Court finds just and appropriate.

Respectfully submitted,

STACEY STEPHENS
By Counsel

By:   /S/ T. Brooke Howard II
T. Brooke Howard II, Esq. (VSB#84910)(U.S. District Ct., D.C.#VA169)
Law Offices of Howard & Howard, PLC
7 Hotel Street
The California Building
Warrenton, Virginia 20186
Telephone: (540) 422-0100
Facsimile: (540) 422-0099
Email: TBH@hhlawva.com
Counsel for Defendant

## AFFIDAVIT OF STACEY STEPHENS

Under penalty of perjury, I, STACEY STEPHENS, the undersigned affiant, does swear or affirm that all representations as set forth above and herein are true and accurate.

*Stacey L. Stephens*
Stacey Stephens

COMMONWEALTH of VIRGINIA, in the County of FAUQUIER

Acknowledged, subscribed and sworn to before me this 4th day of October , 20 23 .

NOTARY REGISTRATION NUMBER 7690872

K. Samantha Parris
NOTARY PUBLIC (My commission expires: 09.30.26 )

*[Notary seal: KIRSTEN SAMANTHA PARRIS / MY COMM EXPIRES 09-30-2026 / REGISTRATION #7690872 / NOTARY PUBLIC / COMMONWEALTH OF VIRGINIA]*

### CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October 2023, a copy of the foregoing was forwarded via email, to:

Douglas Meisel, Esq.
Narcotic & Dangerous Drug Section
U.S. Department of Justice, Criminal Division
145 N Street NE, East Wing, Suite 2300
Washington, D.C. 20530
Office: (202) 598-2281
Cell: (202) 923-7821
douglas.meisel@usdoj.gov

By:   /S/ T. Brooke Howard II



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| vs. | **)** | **NONGUIDELINE MISDEMEANOR** |
| | **)** | **PRESENTENCE INVESTIGATION REPORT** |
| | **)** | |
| | **)** | |
| | **)** | **Docket No.:    0090 1:23CR00134-001** |
| **Stacey  Stephens** | **)** | |
| | **)** | |

**Prepared for:**     Tanya S. Chutkan
                                    United States District Court Judge

**Prepared by:**      Macy Mullins
                                    United States Probation Officer
                                    219-852-3642
                                    macy_mullins@innp.uscourts.gov

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| Douglas Spencer Meisel | Thomas Brooke Howard II |
| 145 N Street NE, Suite 2300 | 7 Hotel Street |
| Washington DC, DC 20530 | Warrenton, VA 20186 |
| 202-598-2281 | 540-422-0100 |
| douglas.meisel@usdoj.gov | tbh@hhlawva.com |

**Sentence Date:**     October 2, 2023, at 10:00 AM

**Offense:**               **Count 4**:
                                   Parading, Demonstrating, or Picketing in a Capitol Building
                                   40 U.S.C. § 5104(e)(2)(G), 40 U.S.C. § 5109(b)
                                   Not more than 6 months imprisonment/$5,000 fine
                                   (Class B Misdemeanor)

**Release Status:**     Arrested on March 29, 2023, in Broad Run, Virginia. Issued a personal
                                   recognizance bond at initial appearance held on March 30, 2023, in the
                                   United States District Court for the District of Columbia.

**Detainers:**            None.

**Codefendants:**      None.

**Related Cases:**      None.

**Date Prepared:**  August 25, 2023          **Date Revised:**  September 21, 2023

STEPHENS, Stacey                                                                 Page 2

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | August 12, 1966 |
| **Age:** | 57 |
| **Race:** | White |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Female |



**PACTS#: 8602063**

| | |
|---|---|
| **SSN#:** | 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 |
| **FBI#:** | R56AKHLNK |
| **USM#:** | 51561-510 |
| **State ID#:** | DC761101 |

| | |
|---|---|
| **Marital Status:** | Widowed |
| **Education:** | Master's Degree |
| **Dependents:** | 0[1] |
| **Citizenship:** | U.S. Citizen |
| **Country of Birth:** | United States |
| **Primary Language:** | English |

| | |
|---|---|
| **Legal Address:** | 5142 Fairview Lane, Broad Run, Virginia  20137 |
| **Residence Address:** | 5142 Fairview Lane, Broad Run, Virginia  20137 |
| **Telephone#:** | |

| | |
|---|---|
| **Alias(es):** | True Name: Stacey Lynn Stephens<br>Also Known As: Stacey Lynn Cooney, Stacey Lynn Carpenter-Cooney<br>Nee (Maiden Name): Stacey Lynn Carpenter |
| **Alternate IDs:** | PACTS#: NDIN 7403734 |

**Restrictions on Use and Redisclosure of Presentence Investigation Report.**  Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

---

[1] Based on IRS Publication 501 definition for dependent(s) to include qualifying child or relative. All identified children, whether or not a dependent of the defendant, are included in Part C of this report.

# PART A. THE OFFENSE

## Charge(s) and Conviction(s)

1.  On March 24, 2023, The United States Attorney for the District of Columbia filed a four-count Complaint charging Stephens with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G). An Information charging Stephens with the same charges was filed on April 24, 2023.

2.  The Information does not provide notice to the defendant the Government intends to seek forfeiture as a part of the sentence.

3.  The criminal conduct charged in the Information occurred on or about January 6, 2021.

4.  On June 26, 2023, the defendant pled guilty to one count of the four-count Information pursuant to a written plea agreement. Count 4 charged Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), 40 U.S.C. § 5109(b). The following sentencing related agreements made between the parties are contained in the plea agreement: the defendant understands the charge to which she pled guilty carries a maximum sentence of six months imprisonment, a term of probation of not more than five years, a fine of not more than $5,000, and a $10 special assessment; the "Statement of Offense" accurately describes Stephen's involvement in the offense; the defendant agrees to allow law enforcement to conduct an interview regarding the events in and around January 6, 2021; Stephens will not be further prosecuted criminally for the conduct in the Statement of Offense and the Government will request the Court dismiss the remaining counts of the Information at the time of sentencing; the United States Sentencing Guidelines do not apply to this class B misdemeanor; the Court is not bound by the plea agreement provisions; Stephens agreed to waive her rights conferred by 18 USC § 3742; Stephens agrees to pay restitution to the Architect of the Capitol in the amount of $500; the defendant agrees to submit a complete, accurate, and truthful financial statement to the Financial Litigation Unit of the United States Attorney's Office; and the defendant authorizes the United States Attorney's Office to obtain a credit report.

5.  On March 30, 2023, the defendant was issued a personal recognizance and, on the same date, the Court issued Conditions of Release requiring her to report for supervision to Pretrial Services in Washington, DC; surrender any passport; not obtain a passport; stay away from D.C. except for Court proceedings, meetings with counsel, and required PSA business; not possess a firearm or other weapon; report law enforcement contact; notify Pretrial Service of any travel outside the State of Virginia; receive Court approval before travel outside of the Continental United States; and verify her address with Pretrial Services.

6.    Pretrial services records indicate the defendant has complied with all Court ordered conditions of release.

### The Offense Conduct

### The Attack on the U.S. Capitol on January 6, 2021

7.    The United States Capitol, which is located at First Street, SE, in Washington, DC., is secured 24 hours a day by United States Capitol Police. Restrictions around the US Capitol include permanent and temporary security barriers and posts manned by US Capitol Police. Only authorized people with appropriate identification are allowed access inside the US Capitol.

8.    On January 6, 2021, the exterior plaza of the US Capitol was closed to members of the public.

9.    On January 6, 2021, a joint session of the United States Congress convened at the US Capitol, which is located at First Street, SE, in Washington, DC. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the US Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

10.   As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the US Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the US Capitol building, and US Capitol Police were present and attempting to keep the crowd away from the US Capitol building and the proceedings underway inside.

11.   At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the US Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by US Capitol Police Officers or other authorized security officials.

12.   At such time, the certification proceedings were still underway, and the exterior doors and windows of the US Capitol were locked or otherwise secured. Members of the US Capitol Police attempted to maintain order and keep the crowd from entering the US Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the US Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the US Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

13. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the US Capitol, including the danger posed by individuals who had entered the US Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the US Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

**Stephens Participation in the January 6, 2021, Capitol Riot**

14. On January 6, 2021, at approximately 2:50 p.m., Stephens was part of a mob that had gathered on the Upper West Terrace of the U.S. Capitol outside the Senate Wing doors.

15. At that time, several Capitol police officers stood inside the Senate Wing door entrance, verbally confronted by rioters. Stephens was present as members of the mob ignored the line of officers and pressed forward inside the U.S. Capitol.

16. Once inside the Capitol, Stephens proceeded south toward the Crypt. She spent approximately 15 minutes inside the Capitol, exiting via the Senate Wing doors at 3:05 pm.

17. On August 10, 2022, Stephens was interviewed by Special Agents assigned to the FBI Washington Field Office and admitted that she and her mother, Linda Carpenter, went to see President Trump speak at the National Mall on January 6, 2021. Stephens, a white female with light-colored hair, stated that she wore red, white, and blue and wore a wool Trump hat and a red "Trump 2020" scarf. During the interview, Stephens confirmed what she was wearing by viewing a photo shown to her by the Agents.

**Elements of the Offense**

18. Stacey Stephens knowingly and voluntarily admits to all the elements of 40 U.S.C. § 5104(e)(2)(G) which makes it a crime to willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings. Specifically, Stephens admits that she willfully and knowingly entered the U.S. Capitol Building knowing that that she did not have permission to do so. Stephens further admits that while inside the Capitol, she willfully and knowingly paraded, demonstrated, or picketed.

**Codefendant**

19. None.

**Related Cases**

20. None.

STEPHENS, Stacey                                                      Page 6

### Victim Impact

21.   In consideration of 18 USC § 3663 and 18 USC § 3663A, the Court is authorized to impose restitution under the terms of a plea agreement. This offense involved a large crowd of individuals who gathered outside the US Capitol, some of whom ultimately forced entry inside the building. Those individuals' actions included, but are not limited to, breaking windows, damaging property, and assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The incident resulted in substantial damage to the US Capitol, requiring the expenditure of approximately $2,923,080.05 in repairs, as of July 7, 2023. In this case, the defendant has agreed to pay $500 toward restitution, payable to the Architect of the Capitol.

### Defendant's Statement

22.   No further statement was provided by the defendant.

### Offense Level Computation

23.   Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

24.   None.

### Adult Criminal Conviction(s)

25.   None.

### Criminal History Computation

26.   Pursuant to USSG §1B1.9, the sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

### Other Criminal Conduct

27.   None.

### Pending Charges

28.   None.

### Other Arrests

29.   None.

## PART C. OFFENDER CHARACTERISTICS[2]

### Current Personal and Family Data

30.     Stacey Lynn Stephens (nee: Carpenter) was born August 12, 1966, in Orange, California, to the marital union of Linda Snell and Francis Carpenter, as verified by State of California Department of Public Health records. She was raised by both parents until they separated when she was eight years old. Her parents' separation was "bitter" from her recollection. Her father maintained a presence in her life, on weekends, for a short period of time before he remarried and moved to Northern California. She then saw her father on a yearly basis and advised she never shared a close relationship with her father after that time.

31.     Stephens was raised by a single mother who provided the basic life necessities. She was raised in safe, middle-class neighborhoods in Orange County, California. Her mother worked as a radiology technician. While she was at work, Stephens and her younger brother would be cared for by their grandmother, neighbor, or family friend. On some occasions, the children had to accompany their mother to work. Her mother never remarried but had shared a ten-year relationship with Donald Mode. Mode served as a father figure to Stephens; she recalled he helped her with her college courses and taught her to hunt and fish. Stephens denied exposure to any form of abuse throughout her upbringing.

32.     The defendant's brother, Jason Carpenter, age 52, resides in Idaho. The siblings maintain monthly contact. Stephens has two paternal half-siblings with whom she does not share a relationship. She continues to maintain yearly contact with her father. Stephens' mother, Linda, passed away in February 2022. She resided at the defendant's home and assisted with taking care of the horses on the property. She passed after she fell in the barn and was found by Stephens. This was a particularly difficult loss as she shared a close relationship with her mother who she described as her best friend.

33.     Stephens has twice married. Her prior eight-year marriage to Sean Cooney produced no children. She wed her husband, Stephen Larry Stephens, in 2005. In January 2022, Mr. Stephens was diagnosed with Stage IV kidney cancer. Doctors predicted he had a seven percent chance of living one year. The cancer continued to spread despite two rounds of chemotherapy, and he now also suffers from adrenal cancer. He participated in a clinical trial for treatment, though he passed away on September 5, 2023. His passing has significantly impacted Stephens and his daughters. Stephens described her husband as a strong man, though his treatment and ailments required her to assist him with daily tasks and doctor visits until his passing. Mr. Stephens has one daughter, Julie Stephens, age 25, from a prior relationship. The couple obtained guardianship of his sister's daughter, McKenzi Golden, age 18, in February 2022 seven months after she began residing with the couple. Stephens considers McKenzi her foster daughter. McKenzi was described as "fragile." Her mother was a heroin user throughout her childhood which resulted in McKenzi living with other family members then being sent to a "troubled child" home in

---

[2] Information provided in Part C of the PSR was obtained from an interview with the defendant. The presentence interview was conducted telephonically with defense counsel participating. The information contained in Part C was verified by her brother unless otherwise noted. Third party records could not be requested due to a lack of signed releases of information.

Utah before being placed with Stephens and her husband. When McKenzi arrived to Stephens' care, she was on a medication regimen consisting of 36 pills for what they were told was bipolar I disorder. Stephens and her husband obtained a separate mental health evaluation for McKenzi which concluded that she experienced behavioral and emotional concerns but provided no formal diagnosis. Further counseling services were unsuccessful. Instead, Stephens observed McKenzi's mental health significantly improve the longer she was at the home with her, noting she believed providing a loving, relaxed household was more beneficial than any medication or therapy services that were previously provided. Stephens shares close relationships with both children. She advised there was a period where her husband and children were upset with her due to the instant case, but they have since become supportive of her.

34.     Stephens resides with her daughter McKenzi at 5142 Fairview Lane in Broad Run, Virginia. An inquiry of the Fauquier County records confirms the home is owned by the defendant and her late husband who purchased the residence in 2012. The over five-acre property includes the home, which is a 6 bedroom, 3.5 bathroom single story with a basement. There are two outbuildings on the property, both utilized for horse purposes. A home assessment revealed the defendant's residence appears suitable for supervision purposes.

## Physical Condition

35.     The defendant is 5 feet, 3 inches tall and weighs 145 pounds. She has brown hair and hazel eyes.  The following tattoos were reported: a panda and cherry blossom on her right abdomen, a heart on her neck, and Winnie the Pooh on her left hip.

36.     Stephens is in overall good health. She reported being diagnosed with atopic dermatitis on her foot which causes itching. She has been prescribed opzelura 1.5% cream which she noted has been the only prescription medication that she has tried that has helped mitigate the symptoms. Stephens advised she was diagnosed with trigeminal neuritis a few years ago and was prescribed Zoloft. She took the medication once then never used it again.

## Mental and Emotional Health

37.     Stephens reported experiencing a particularly high level of stress due to a combination of circumstances that have occurred over the last 18 months, namely her husband's cancer diagnosis, her mother passing, her sister-in-law passing of cancer, and the instant case. She has not sought any therapy our counseling services and does not believe it is necessary. Rather, she has utilized coping mechanisms on her own and relies on her faith to carry on. Stephens reported still feeling stressed at this time. She was previously prescribed Zoloft for stress over ten years ago, though she took the medication for only four days then ceased due to negative side effects. She has no interest in prescription medications for mental health treatment.

## Substance Abuse

38.     No illicit substance use nor treatment for such was reported. She is a social alcohol consumer.

STEPHENS, Stacey

### Educational, Vocational and Special Skills

39.     Stephens earned her Master of Business Administration in 2006 from the University of Phoenix Online as confirmed by her diploma. Her baccalaureate studies at Vanderbilt University pertained to molecular biology. She earned her Bachelor of Science in 1987 according to her diploma. She also attended law school for three semesters and advised she did well, but she did not enjoy mock trials, so she ceased the education.

### Current Employment Status

40.     Stephens has been employed as a senior compliance and privacy analyst at Availity based out of Jacksonville, Florida, since September 2018. She earns $133,000 yearly in this capacity. Stephens explained her work involves software security for the United States Department of Veterans Affairs. Her work is almost entirely conducted remotely. Prior to this role, she worked in project management for two companies from 2013 to 2018.

41.     In addition to her fulltime employment as an analyst, Stephens runs an equestrian business, Reining in Color Farm, which she operates out of her home. Stephens expressed she used the funds that would have gone towards law school tuition and bought her first horse, which began her passion as an equestrian. Stephens previously participated in horse shows and rode horses three times weekly, though she no longer has adequate time to tend to the horses as much as she did previously due to familial responsibilities.

### Social Media

42.     Stephens advised she uses social media (FaceBook, X, Truth Social, and Instagram) for both personal and business purposes. She is more active on social media promoting her equestrian business than her personal account, which she utilizes mostly to view other's posts.

### Financial Condition: Ability to Pay

43.     Stephens provided the following financial information. The estimated value of the defendant's home was derived from Fauquier County records.

#### Assets

| | | |
|---|---|---|
| Personal Checking Account | Bank of Clarke | $45,000.00 |
| Retirement Account | | $200,000.00 |
| Residence | 5142 Fairview Lane | $702,600.00 |
| Vehicle | 2016 Ford F350 | Unspecified |
| Vehicle | 2012 Mini Cooper | Unspecified |
| Vehicle | 2009 Adam Horse Trailer | Unspecified |
| **Total Assets** | | **$947,600.00** |

**STEPHENS, Stacey**                                                            **Page 10**

**Liabilities**

| | | |
|---|---|---|
| Mortgage | 5142 Fairview Lane | $359,825.92 |
| Vehicle | 2016 Ford F350 | $39,000.00 |
| **Total Liabilities** | | **$398,825.92** |
| **Total Net Worth** | | **$548,774.08** |

**Monthly Income**

| | |
|---|---|
| Salary | $6,500.00 |
| Business Income | $400.00 |
| **Total Monthly Income** | **$6,900.00** |

**Monthly Expenses**

| | |
|---|---|
| Home/Mortgage | $2,789.55 |
| Property Taxes | $140.00 |
| Groceries and Supplies | $600.00 |
| Utilities | $507.00 |
| Telephone | $310.00 |
| Cable | $155.00 |
| Auto Loan Payment | $732.00 |
| Commuting Expenses | $200.00 |
| Auto Insurance | $400.00 |
| Medical Expenses | Unknown |
| Credit Card | $1,500.00 |
| **Total Monthly Expenses** | **$7,333.55** |
| **Total Monthly Cash Flow** | **($433.55)** |

**Analysis**

44.     The information contained in the Net Worth Statement (dated July 19, 2023) was obtained from the defendant. Independent research was conducted through an automated credit report (Equifax). An Equifax report dated August 23, 2023, revealed the following accounts with balances: one Redstone Federal credit card with a balance of $1,060; one auto loan from Redstone Federal with a balance of $38,783; a real estate mortgage from JP Morgan Chase Bank with a balance of $358,552; a JP Morgan Chase credit card with a balance of $2,071; and a Citibank credit card with a balance of $395.

45.   The defendant has agreed to pay restitution in the amount of $500. Should the Court impose a fine it should consider the defendant's familial responsibilities to include the recent passing of her husband and her 18-year-old foster daughter, McKenzi.

## PART D. SENTENCING OPTIONS

### Custody

46.   **Statutory Provisions:**  The maximum term of imprisonment is six months. 40 U.S.C. § 5104(e)(2)(G) and 40 U.S.C. § 5109(b).

47.   **Guideline Provisions:** Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

### Supervised Release

48.   **Statutory Provisions:** Pursuant to 18 USC §§ 19 and 3583(b)(3), this offense of conviction meets the definition of a "petty offense," consequently, a term of supervised release is not applicable.

49.   **Guideline Provisions:** Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

### Probation

50.   **Statutory Provisions:**  The defendant is eligible for up to five years probation because the offense is a misdemeanor. 18 U.S.C. § 3561(c)(2).

51.   **Guideline Provisions:** Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

### Conditions of Supervision

52.   The following conditions listed in the most recent revision of the Judgment in a Criminal Case (Form AO 245B), establish the basic expectations for an individual under supervision, identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvement in the conduct and condition of the person under supervision, as required under 18 USC § 3603. These conditions are reasonably related to the sentencing factors set forth in 18 USC § 3553(a)(1) and (a)(2)(B), (C), and (D); such conditions involve no greater deprivation of liberty that is reasonably necessary for the purposes set forth in § 3553(a)(2)(B), (C), and (D); and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to 28 USC § 994a.

   1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, or within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must answer truthfully the questions asked by your probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

11. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

12. You must follow the instructions of the probation officer related to the conditions of supervision.

53.    In addition to the mandatory and discretionary conditions of supervision, 18 USC § 3563(a) and (b), the Court may impose other conditions as they relate to the nature and circumstances of the offense and the history and characteristics of the defendant. 18 USC § 3553(a)(1).

54.    In consideration of the above, the Court may impose all or a combination of the following additional conditions: (a) payment of restitution as provided under the terms of the plea agreement.

55.    The Probation Office researched available programs within the Bureau of Prisons; however, the defendant's personal history does not support the need for transitional services while incarcerated.

### Mandatory Drug Testing

56.    The Violent Crime Control and Law Enforcement Act of 1994 requires an individual under supervision, whose offense occurred after September 13, 1994, refrain from the unlawful use of a controlled substance; submit to one drug test within fifteen days of the commencement of supervision; and two additional periodic drug tests. The condition for mandatory drug testing may be ameliorated or suspended by the Court if reliable sentencing information indicates a low risk of future substance abuse by the defendant. 18 USC §§ 3563(a)(5) and 3583(d).

### Fines

57.    **Statutory Provisions:** The maximum fine is $5,000. 18 U.S.C. § 3571(b).

58.    A special assessment of $10 is mandatory. 18 U.S.C. § 3013.

59.    **Guideline Provisions:** Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

60.    In determining the fine amount, the Court shall consider, among other factors, the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence. 18 USC § 3572(a)(6) and USSG §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests that the Court use a monthly cost of $3,688 for imprisonment, a monthly cost of $2,980 for community confinement, and a monthly cost of $371 for supervision.

STEPHENS, Stacey                                                        **Page 14**

### Restitution

61.  **Statutory Provisions:** Pursuant to 18 USC § 3663(a)(3), restitution in the total amount of
     $500 shall be ordered in this case. Restitution, as set forth below, shall be paid to the Clerk
     of the Court for the United States District Court, District of Columbia, who shall forward
     the payments to:

     <u>Victim Name</u>                                    <u>Amount of Loss</u>

     Architect of the Capitol                              $500.00
     Office of the Chief Financial Officer
     Ford House Office Building, Room H2-205B
     Washington, DC 20515

62.  **Guideline Provisions:** Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not
     apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

## PART E. SENTENCING FACTORS

63.  Pursuant to 18 USC § 3553(a), the Court shall impose a sentence sufficient, but not greater
     than necessary, to reflect the seriousness of the offense; to promote respect for the law and
     to provide just punishment for the offense; to afford adequate deterrence; to protect the
     public from further crimes of the defendant; and to provide the defendant with needed
     educational/vocational training, medical care or other correctional treatment.


                          Respectfully Submitted,

                          **BRIAN D. SHAFFER**
                          **CHIEF UNITED STATES PROBATION OFFICER**

               By:     s/Macy Mullins

                       Macy Mullins
                       United States Probation Officer
                       219-852-3642


Approved:

s/Jaime A. Klopfenstein        Date: 09/21/2023

Jaime A. Klopfenstein
US Probation Officer
219-852-3663

STEPHENS, Stacey                                                              Page 15

## ADDENDUM TO THE PRESENTENCE REPORT
## UNITED STATES V. STACEY STEPHENS
## DOCKET NO.: 0090 1:23CR00134-001

### DISCLOSURE AND OBJECTION CHRONOLOGY

The presentence report was disclosed to counsel on August 25, 2023. Pursuant to the Court's Sentencing Order and/or Federal Rules of Criminal Procedure, Rule 32(e), the parties were required to submit any objections to the presentence report by September 8, 2023.

### OBJECTIONS

#### By the Government

The Government did not file objections to the presentence report.

#### By the Defendant

The defendant and Defense Counsel did not file objections to the presentence report.

#### Supplemental Information by the Probation Office

The presentence report, specifically Part C, was updated to include information obtained since the filing of the draft presentence report. The total loss amount as a result of the damage incurred by the US Capitol was also updated under the Victim Impact section.

Respectfully Submitted,

**BRIAN D. SHAFFER**
**CHIEF UNITED STATES PROBATION OFFICER**

By:     s/Macy Mullins

Macy Mullins
United States Probation Officer
219-852-3642

APPROVED BY:

s/Jaime Klopfenstein

Jaime A. Klopfenstein          Date: 09/22/2023
US Probation Officer
219-852-3663